FILED

2010 Apr-30  AM 11:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| BRITT GODSEY, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:10-CV-0043-LSC |
| | ] | |
| W.E. PEGUES, INC., GREG | ] | |
| PEGUES, ED PEGUES, LAMAR | ] | |
| COUNTY HEALTH DEPARTMENT, | ] | |
| et al., | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff Britt Godsey, ("Plaintiff" or "Godsey"), a resident of

Alabama, filed suit against W.E. Pegues, Inc., Greg Pegues, Ed Pegues

("Pegues Defendants"), Lamar County Health Department ("Department"),

and various unnamed employees of the Department (collectively

"Defendants") in connection with what Plaintiff alleges was the unlawful

exhumation of Godsey's son, Dillon B. Godsey.  The Pegues Defendants are

all residents of Mississippi.  The Department and its employees are residents

of Alabama.  Defendants removed this action to this Court on January 8, 2010, averring federal jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

On February 7, 2010, Plaintiff filed a motion to remand, claiming that this action is not properly removable pursuant to 28 U.S.C. § 1332(a) because the Alabama Defendants destroy diversity.[1]  (Doc. 4.)  The issues raised in this motion have been fully briefed.  Upon due consideration this Court finds that removal was not proper, and that this case is due to be remanded.

II.    Background.[2]

The limited facts available to this Court reveal a macabre tale. According to the complaint, Dillon B. Godsey died on February 18, 2008, and was laid to rest at Webb Cemetery in Lamar County, Alabama.   On November 9, 2009, Clyde Driver, the Grandfather of the boy, noticed a truck and backhoe near the child's grave.  Driver then came upon unknown parties

---

[1]    Plaintiff initially claimed that removal was procedurally defective as the Lamar County Health Department did not join in seeking removal.  The Department expressly consented to removal in its filing of March 16, 2010.  (Doc. 15.)

[2]    The facts recited in this opinion are, unless otherwise indicated, taken from the allegations contained in Plaintiffs' complaint.

engaged in the removal of the body.  Upon confronting the men, they fled in their vehicles, taking the body of Dillon Godsey with them.  Apparently, the whereabouts of the child remain unknown.  Plaintiff seeks damages from the parties responsible for his son's exhumation and the return of his body to its grave.

III.  Analysis.

    A.    Plaintiff's Motion to Amend the Complaint and Add Non-Diverse Parties.

Plaintiff alleges in its complaint that employees of the Department, listed as Fictitious Party Defendants 31-40, acted "willfully, maliciously, fraudulently, [and] in bad faith" in permitting the allegedly unlawful exhumation.  (Doc. 1-1 at 26.)  On February 25, 2010, after already filing the motion to remand, Plaintiff moved to amend the complaint to clarify that Fictitious Party Defendants 31-40 are in fact Diane Holmes and Debbie Knight.  (Doc. 11.)  Both are citizens of Alabama and, if properly joined, destroy diversity.

Title 28 U.S.C. § 1447(e) states, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter

jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  The rule is generally that, the district court, "when faced with an amended pleading naming a new non-diverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment."  *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).  The Fifth Circuit has laid out guidelines for assisting the district court in making decisions in this situation, including the following four factor test: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed, and; (4) any other factors bearing on the equities."  *Id.*

In the present instance, it is evident that the motion to amend is due to be granted.  While the names of the parties at issue are new to this case, the arguments regarding them are not.  The fictitious parties have been a part of this action since the initial complaint.  Plaintiff included in the motion to remand detailed arguments regarding the allegations against the Department's employees.  (Doc. 5 at 13-19.)  The addition of these parties

is not a new attempt to destroy diversity after the first has failed, but rather a mere clarification of the parties involved.  In fact, the Pegues Defendant's brief in response to Plaintiff's motion to remand, in an attempt to show that the fictitious parties should not be considered for purposes of diversity, sought to distinguish Plaintiff's precedent that stated otherwise by arguing, "Here, the plaintiff has not identified anyone to substitute for agents of the Health Department."   (Doc. 9 at 10).   Plaintiff has corrected that deficiency, to the extent it was one, with its motion to amend.  Plaintiff has done so in a non-dilatory fashion, less than two months after the case was removed, and the Court sees no reason not to grant the motion to amend. Therefore, Plaintiff's motion to substitute Department employees Diane Holmes and Debbie Knight for Fictitious Party Defendants 31-40 is GRANTED. (Doc. 11.)

B.  Diversity Jurisdiction Analysis.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).  For removal to be proper, the court must have subject-matter jurisdiction in the case.  "Only state-

court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand.  *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). The removing party bears the burden of establishing subject-matter jurisdiction.  *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

Before this Court can exercise diversity jurisdiction, complete diversity of citizenship must exist.  "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant."  *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).  Plaintiff in this matter is a resident of Alabama, as are the Department's employees.  At first glance then, diversity jurisdiction would appear to be lacking. Defendants argue, however, that the Department's employees have been fraudulently joined to this action.

This Court is free to disregard the citizenship of any defendant it determines has been fraudulently joined.  *Triggs*, 154 F.3d at 1287 (11th Cir. 1998).  In *Triggs*, the Eleventh Circuit Court of Appeals described three

situations when a defendant can be considered to have been fraudulently joined:

> Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity. Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. In *Tapscott [v. MS Dealer Service Corp.]*, 77 F.3d at 1355 (11th Cir. 1996), a third situation of fraudulent joinder was identified—i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

*Id*. (internal citations omitted).

The burden on the removing party to prove fraudulent joinder, however, is a "heavy one." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *see also, De Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). In assessing a fraudulent joinder objection, "the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *De Perez*, 139 F.3d at 1380. The "determination of whether a resident has been fraudulently joined must be based upon the plaintiff's pleadings at the

time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties.*"  *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (emphasis in original) (quoting *De Perez*, 139 F.3d at 1380).  "The proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)."  *Id*. at 1322-23 (internal citations omitted).

Even though factual considerations are resolved in favor of the plaintiff, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor."  *Id*. at 1323.  In other words, if the defendant offers sworn statements supporting the allegation of fraudulent joinder, the plaintiff must present evidence to dispute the assertions in the form of affidavits or other evidence.  *Id*.  When evidence submitted by the defendant is undisputed, "the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint."  *Id*.  The Court simply cannot, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*"  *Id*. (quoting *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000)(emphasis in original)(internal citations omitted)).

In addition to factual considerations, the plaintiff must state a valid claim.  However, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  *Triggs*, 154 F.3d at 1287 (internal citations omitted).  When assessing possibility, the Eleventh Circuit has colorfully stated that "[i]n considering *possible* state law claims, possible must mean more than such a possibility that a designated residence can be hit by a meteor tonight.  That is possible.  Surely, as in other instances, reason and common sense have some role."  *Legg*, 428 F.3d at 1325 n.5 (internal citations omitted).  In other words, a plaintiff must show that the potential for legal liability is "reasonable" and "not merely theoretical." *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 1992)).

Defendants here assert the first sort of fraudulent joinder outlined in *Triggs*, that "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." 154 F.3d at 1287. Defendants argue first that the Department is subject to sovereign

immunity.   The Court does not disagree with this assertion.[3]   Plaintiff, however, also asserts claims against the employees of the Department, Defendants Holmes and Knight.  Defendants argue that Holmes and Knight are entitled to qualified immunity under Alabama law.  They also argue that no cause of action has been stated in Plaintiff's complaint, as the role of the Department and its employees in approving exhumations is largely *pro forma* and not intended to determine the legality of that exhumation.  The Court will address these arguments in order.[4]

Generally, a state agent is immune from suit while acting in his official capacity.  *Ex Parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).  The only exceptions to this immunity are when their actions violate the Constitution or laws of the United States or Alabama or when "the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id*.  Plaintiff in this case has alleged that Defendants were acting in a willfull and malicious manner, going so far as to allege a conspiracy between Holmes and Knight and the

---

[3]     Nevertheless, as the Court finds it does not have jurisdiction over this matter, it declines to dismiss the Department at this time.
[4]     As neither party has submitted affidavits in support or opposition of remand, the Court will consider the complaint only.

other Defendants in Count Eight.  (Doc. 1-1 at 27-28.)  Plaintiff is not alleging mere negligence, and at this stage of litigation the Court cannot say that Plaintiff will not be able to show that Defendants acted in such a way as to deprive them of their state agency immunity.  *See Ex Parte Bitel*, 2010 Ala. Lexis 32, *14 (March 12, 2010) (refusing to enforce state agency immunity because "[w]hen the complaint is viewed most strongly in Sanders's favor, it is conceivable that she could prove facts that would show that the supervisors failed to discharge duties pursuant to specific departmental rules or regulations. If so, Sanders may possibly prevail on her claims.").

Nevertheless, even though the Court is satisfied that the complaint is sufficient to withstand a qualified immunity claim as to Holmes and Knight, Plaintiff also must state a viable cause of action.  Defendants argue that Plaintiff has failed to state a cause of action against Holmes and Knight. This argument is premised on the technical nature of the Alabama regulations on disinterment.  Section 22-9A-16(g) of the Alabama Code states simply, "Authorization for disinterment and reinterment shall be required prior to disinterment of a dead body or fetus as prescribed by rules

of the [State Board of Health]."  These rules are contained in the Alabama

Administrative Code.  Rule 420-7-1-.13 covers disinterment and reads,

> (a) The funeral director, or person acting as such, who intends
> to disinter a body must file a notice of disinterment with the
> State Registrar or the local registrar in the county in which the
> body is buried to indicate that he or she will abide by the Rules
> and Regulations of the State Board of Health which govern the
> disinterment, transportation, and disposition of dead human
> bodies.
>
> (b) The State Registrar or local registrar shall provide a
> statement to the funeral director, or person acting as such, that
> the required notice has been filed. The acceptance of the notice
> by the State Registrar or local registrar does not establish a legal
> right to disinter a body, but only indicates that the appropriate
> notice to follow the Rules and Regulations of the State Board of
> Health has been filed by the person carrying out the
> disinterment.

It appears from this regulation that the process for disinterment is

largely *pro forma* — the funeral director files a notice that a body is to be

disinterred and the responsible official provides a statement that the notice

has been filed.  No investigation is implied, and no standards for conducting

a disinterment set forth.   From a purely statutory point of view, the

Defendants appear to be correct.  The actions of Holmes and Knight did not

violate this statutory requirement.  Plaintiff's complaint, however, is not

premised on a statutory violation.  Rather, it alleges that Holmes and Knight "intentionally, willfully, knowingly, recklessly, wantonly, and/or carefully" permitted the exhumation of the  child despite knowledge that "there was no legitimate, arguable, or debatable reason." (Doc. 1-1 at 26.)  It seems clear that under certain circumstances Defendants would have an obligation to act to prevent a disinterment.  If, for instance, a person were to inform Defendants of plans to disinter a body for the purposes of stealing it, it would seem that a reasonable public servant should act to prevent such a heinous act.  It may be that only a modicum of discovery will reveal that Holmes and Knight were merely exercising their duties as required by Alabama law with no knowledge of the alleged illegality of the Pegues defendants' actions.  But that is not for this Court to decide.  It is evident that, under the current posture, a cause of action lies against Alabama defendants, thus destroying diversity.   As such, this case is due to be remanded.

IV.    Conclusion.

For the reasons herein stated, this Court grants Plaintiff's motion to remand.  (Doc. 4.)  This matter will be remanded to the Circuit Court of

Lamar County, Alabama whence it came.  A separate order consistent with this Opinion is issued herewith.

Done this <u>30th</u> day of <u>April 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**